## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MERVA K. MARTIN, | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **Civ. No. 08-14E** |
| | ) | |
| PLEASANT RIDGE MANOR-EAST, | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

## OPINION

Pending before the Court is a Motion for Summary Judgment [Doc. #21] filed by

Defendant Pleasant Ridge Manor-East ("Defendant" or "PRM-East") on the Complaint

filed against it by its employee, Plaintiff Merva K. Martin ("Plaintiff" or "Martin").

Plaintiff's Complaint alleges: (1) race discrimination claims pursuant to Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e -2 ("Title VII"), and the

Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955; and (2) an age

discrimination claim pursuant to the Age Discrimination in Employment Act ("ADEA").

Plaintiff summarizes her case as follows:

> Despite her superior credentials, years of experience and loyalty with
> Defendant, bid submission in May of 2005, resubmission on October 26,
> 2005, the advertisement by Defendant of an available RN supervisor
> position and Ms. Carr's resignation in the fall of 2005, Plaintiff was never
> contacted about the posted positions let alone interviewed.  Plaintiff
> contends that she was overlooked for any of the advertised full-time
> registered nurse positions with the Defendant due to her race.

Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary

Judgment ("Plaintiff's Opposition Brief"), p. 4.

For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted in favor of Defendant with respect to all of Plaintiff's claims against Defendant,[1] and judgment entered in favor of Defendant pursuant to Fed.R.Civ.P. 58.

## I. Standard of Review.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, we "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Farrell, 206 F.3d at 278 (citation omitted). "There must, however, be sufficient evidence for a jury to return a verdict in favor of the nonmoving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted." Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994).

Where the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325

---

[1] Although Defendant inexplicably neglected to move for summary judgment with respect to Plaintiff's PHRA claims, we will *sua sponte* grant summary judgment in favor of Defendant and against Plaintiff with respect to Plaintiff's race discrimination claims brought against Defendant pursuant to the PHRA, 43 P.S. § 955, for the same reasons we have granted summary judgment in favor of Defendant and against Plaintiff with respect to Plaintiff's Title VII race discrimination claims. See Goosby v. Johnson & Johnson Medical. Inc., 228 F.3d 313, 317 n. 3 (3d. Cir. 2000) (citing Jones v. School District of Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999)) (explaining that the analysis required for adjudicating the plaintiff's race and gender discrimination claims under PHRA is identical to a Title VII inquiry and therefore, a court need not separately address said PHRA claims.).

(1986). If the moving party has carried this burden, the burden shifts to the non-moving party to point to sufficient cognizable evidence to create material issues of fact "such that a reasonable jury can find in its favor." McCabe v. Ernst & Young, LLP, 494 F.3d 418, 424 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)); see Celotex, 477 U.S. at 332. "[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment. Instead, the affiant must set forth specific facts that reveal a genuine issue of material fact." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009) (citing Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir. 2002); Maldonado v. Ramirez, 757 F.2d 48, 51 (3d Cir. 1985)).

## II. Statement of Relevant Facts.

Following is a statement of the relevant facts contained in the record of this case viewed in a light most favorable to Plaintiff as the non-moving party.

Plaintiff Merva K. Martin is African-American. (Defendant's Statement of Undisputed Material Facts ("DSUMF"), ¶ 1.) Defendant PRM-East is Plaintiff's employer. (Id. at ¶ 5.) PMR-East hired Martin as a *per diem* Registered Nurse ("RN") in 1994. (Id. at ¶ 3.) Depending on staffing needs, Plaintiff may work at PRM-East as a regular nurse, an RN supervisor, or an RN charge nurse. (Id. at ¶ 6.) Defendant does not dispute that Plaintiff is qualified for all of these jobs. (Id.)

Since being hired at PRM-East, Martin has bid for numerous nursing positions over the years, but has never been promoted or even been interviewed for a job on which she has bid. (Plaintiff's Statement of Undisputed Material Facts ("PSUMF"), ¶¶ 9-10.)

3

Emma Carr ("Carr") is a Caucasian female who currently works for Defendant as a full-time nurse. (Exhibit C to DSUMF, Carr Deposition, p. 31.) Sometimes Carr works as a charge nurse and sometimes she works as a supervisor nurse. (Id. at p. 33.) Carr originally had been hired by Defendant as an RN in February 2005, and she began working as an RN at PRM-East in April 2005. (Id. at pp. 15, 38.) In the winter of 2004, Plaintiff had unsuccessfully bid for the position for which Carr originally was hired in February 2005. (Exhibit A to DSUMF, pp. 36-38.)

When she first was hired, Carr worked only as a nurse or a charge nurse, not a nurse supervisor. (Exhibit C to DSUMF, pp. 35, 38.) When Carr first began working for PRM-East in April 2005, she "shadowed" Martin and other RNs in order to become oriented.  (Id. at pp. 37-39.)

Sometime in late October or early November 2005, PRM-East posted a position described on a PRM Human Resources form as "7-3/3-11 R.N. - Emma Carr's position." (Exhibit B to DSUMF, p. 6.) This PRM document, dated November 7, 2005, also indicated that as of November 7, 2005, noone had bid (applied) for Carr's job. (Id.) The document further stated "[t]he posting time for that bid has been completed. The purpose of this memo is to advise you of the bidders on the posting"and "[p]lease remember, the contract states, 'In filling a vacancy, the Employer shall select the bidding employee with the greatest seniority if that employee has the necessary skills and qualifications to do the job, provided that in cases of competing bidders, the job may be awarded to a less senior bidder when, and only when, the less senior bidder possesses substantially greater skills,

4

bona fide qualifications, and abilities'." (Id.)

Carr's position opened and was posted because Carr submitted a letter of resignation to Defendant after she took a full-time nursing position at another nursing facility. (Exhibit C to DSUMF, pp. 29-31.)  Within two weeks of having given her resignation notice, however, Carr asked Defendant if she could not resign and instead stay on per diem as opposed to full-time. (Id. at p. 30). Defendant said yes. (Id.)  Carr worked per diem for approximately one month, and then asked Defendant if she could return to work full–time as opposed to being per diem. (Id. at pp. 30-32.) PRM-East again said yes. (Id.)

PRM-East also posted two RN nursing supervisor positions as open in September 2005. (Exhibit B to DSUMF, pp. 4-5.)  One was a position for a "7-3 RN SUPV. - WANDA WESTGATE's POSITION" and one was a position for a "3-11 RN SUPV. - CATHY HANES"S POSITION." (Id.)  On or about September 15, 2005, Plaintiff applied for the RN Supervisor or "Nursing Supervisor" position to replace Wanda Westgate.  (Id. at p. 4)

With respect to one of these two open RN nursing supervisor positions, David McEldowney ("McEldowney"), Human Resources Director at PRM-East, said:

> In my role, I posted an opening for a Nursing Supervisor at [Pleasant Ridge]. That posting was up September 7, 2005 through September 16, 2005. I also advertised the opening in the Erie Times newspaper on October 23, 2005 and October 26, 2005. However, nothing further has been done in the recruitment process because we are trying to determine whether the position needs to be filled or whether the duties may be reassigned to other employees.

(Exhibit D to DSUMF.)  A copy of a PRM job posting from the Erie Times was attached

to Defendant's Answer to Plaintiff's Complaint; the posting stated that the position was

for a "RN Supervisor on the day shift at its East facility." (Defendant's Answer and New

Matter, Exhibit A.)  Plaintiff applied for the posted nursing supervisor position, which

Plaintiff described in her deposition as a "Charge Nurse Position."  (Exhibit A to

DSUMF, pp. 43-44.)

Ms. Westgate's position was never filled. (Exhibit D to DSUMF; DSUMF, ¶ 9a.)

Plaintiff believes that Ms. Westgate's position has been changed to a Registered Nurse

Assessment Coordinator ("RNAC") position and that said position currently is held by

Mark Yeagle (Exhibit A to DSUMF, p. 46.)  Martin does not know what are the

qualifications for a RNAC position, other than having a RN license.  (Id. at p. 30.) Martin

did not apply for this RNAC position. (DSUMF, ¶ 9(a).)

At the time of the alleged discriminatory incidents, Martin was the only African-

American RN employed at PRM-East, had over ten (10) years of nursing experience, and

possessed an associate's degree from Gannon College.  (Exhibit A to DSUMF, pp. 11, 28,

and 74.)  Plaintiff continues to work at PRM-East as a per diem RN. (DSUMF, ¶ 5;

PSUMF, ¶ 5).

### III. Legal Analysis.

### A. Exhaustion of Administrative Remedies.

Defendant first moves for summary judgment on Plaintiff's race discrimination

claims, to the extent they are based upon Plaintiff not being hired for a nursing position in

March 2005, for failure to exhaust administrative remedies.  Defendant's Brief in Support

of Motion for Summary Judgment ("Defendant's Supporting Brief"), p. 2.  The basis for

this argument is that Plaintiff's administrative charge, filed with the Pennsylvania Human

Relations Commission ("PHRC") and cross-filed with the EEOC, only referenced Martin

not being hired for nursing positions in May and October 2005 and never discussed a

March 2005 position as Plaintiff referenced in her Complaint: "Martin has failed to

exhaust her administrative remedies as to any claim arising from a failure to promote her

prior to May 2005; her claims regarding March 2005 must therefore be dismissed." Id. at

p. 7.

 In response, Plaintiff explains that the reference to March 2005 in the Complaint

was "the result of a mistaken transcription" and that it should have read May 2005.

Plaintiff's Opposition Brief, p. 7.

 While the Complaint is sloppily drafted, when the allegations of the Complaint are

read in conjunction with the evidence of record, including the administrative charge filed

with the PHRC, it is clear that Plaintiff's claims against Defendant do not include a claim

that Defendant failed to consider Plaintiff for a  nursing position in March 2005. There

being no March 2005 incident at issue, it is not necessary to further substantively address

Defendant's failure to exhaust administrative remedies argument with respect to a March

2005 event and we elect not to do so.

7

## B. Abandonment of Claims.

Defendant further argues that any discrimination claims related to Plaintiff

applying for a nursing position in May 2005, applying for an RN Supervisor position in

October-November 2005, or being retaliated against, must be dismissed because while

Plaintiff complained about these events in her administrative charge, they are not alleged

in this civil action. See Defendant's Supporting Brief, pp. 2 and 7.

Reviewing the allegations contained in Plaintiff's Complaint, Plaintiff did not

allege that Defendant retaliated against Plaintiff. Moreover, Plaintiff does not argue in

her Opposition Brief that she is alleging a retaliation claim against Defendant.

Accordingly, we find Plaintiff has abandoned any and all retaliation claims against

Defendant and Defendant's motion for summary judgment on any retaliation claims shall

be granted.

The viability of Plaintiff's race discrimination claims related to her applying for a

nursing position in May 2005 and a nursing supervisor position in October/November

2005 are not as easily addressed. Plaintiff argues in her Opposition Brief that she has not

abandoned these claims, and certainly there are times when a court has permitted a claim

to withstand a motion for summary judgment even though it was not expressly stated in

the Complaint. See, e.g., Isse v. American University, 540 F.Supp.2d 9, 28 and n. 22

(D.D.C. 2008) (concluding that plaintiff's failure to accommodate claim, raised in for the

first time in plaintiff's opposition to defendant's motion for summary judgment, was not

barred, "even though not separately pled in his Complaint, because it 'could have

reasonably been expected to grow out of [his] earlier complaint,' and is 'like or related' to the claims of discrimination raised in his EEOC charge.") (quotation omitted).

Upon review of the documents filed by both parties in this case, what the Court finds unique about this case is that here, Plaintiff was questioned during her deposition very specifically by defense counsel about the factual bases underlying her Complaint. Specifically, Plaintiff was asked during her deposition: "[a]nywhere in your Federal Complaint do you allege that you have been discriminated against, on any basis, age or race, because you were not given the opportunity to interview for the nursing supervisor position [that opened in the fall of 2005]?" Plaintiff answered "No." She was then asked "So the only position that we're talking about in your Federal lawsuit is the charge nurse supervisor position that you say Emma Carr was awarded in October, November, December of 2005?" Plaintiff did not answer at that point. Instead she asked to speak to her counsel, permission was given, and a recess was taken for approximately half an hour. Upon the deposition resuming, the last question and answer were read back to Plaintiff by the court reporter and Plaintiff was asked "[y]ou understand what I meant - you now understand what I meant with that question?" Plaintiff answered "yes." Plaintiff was then asked "[a]nd your answer is?" Plaintiff's response was "[y]es." Questioning of Plaintiff by defense counsel then continued, with the focus of the questioning being solely on Plaintiff's claims related to Emma Carr's position.

Under this factual scenario, where: (1) Plaintiff's Complaint never alleges that Plaintiff was not interviewed or hired for a nursing position in May 2005 or for a RN

9

supervisor position in the fall of 2005 because of her race; and (2) Defendant expressly

asked Plaintiff whether her discrimination claim was limited to the events surrounding

Emma Carr's position and Plaintiff said yes, we find that Plaintiff has abandoned any and

all racial discrimination claims premised upon her applying for a nursing position in May

2005 or for a RN Supervisor position in the fall of 2005.   Any other conclusion would be

prejudicial to Defendant.

Moreover, we find with respect to any race discrimination claims related to

Plaintiff applying for a nursing position at PRM-East in May 2005, that summary

judgment must be granted with respect to this part of Plaintiff's race discrimination claim.

Even viewing the evidence of record in a light most favorable to Plaintiff, she has failed

to establish a genuine issue of material fact with respect to whether she applied for a

charge nurse position at PRM-East in May 2005, a necessary element of her prima facie

case for race discrimination based Defendant's failure to interview and/or hire her for this

position. See Bray v. Marriott Hotels, 110 F.3d 986, 889-990 (3d Cir. 1997) (stating that

"in a case of failure to promote under Title VII, the plaintiff must carry the initial burden

of establishing a prima facie case of unlawful discrimination. Thus, the plaintiff must

establish that he or she . . . .applied for and was qualified for a job in an available position

. . . ."). More specifically, in ¶ 8 of Defendant's Statement of Undisputed Material Facts,

Defendant stated "[i]n fact, there was no Charge Nurse position open with PRM in May

2005." (DSUMF, ¶ 8, citing Exhibit B to DSUMF, pp. 1-6)  Plaintiff did not deny or

otherwise controvert the veracity of said fact in her Statement of Undisputed Material

10

Facts, stating only, without any supporting documentation, that "[i]n the [PHRC] charge

of discrimination Plaintiff submitted in March of 2006, she alleges that she submitted

applications for a charge nurse position in May of 2005 and for an RN supervisor position

in October 2005" and "Plaintiff alleges that she was not selected for the May and October

2005 job vacancies because of her race."  Local Rule 56(E) states: "Alleged material facts

set forth in the moving party's Concise Statement of Material Fact or in the opposing

party's Responsive Concise Statement, which are claimed to be undisputed, will for the

purpose of deciding the motion for summary judgment be deemed admitted unless

specifically denied or otherwise controverted by a separate concise statement of the

opposing party." LR 56(E).  Applying this rule, Plaintiff is deemed to have admitted that

there was not a charge nurse position available at PRM-East in May, 2005.  There not

being a charge nurse position available in May 2005, clearly Plaintiff could not have

applied for a charge nurse position in May, 2005 and any race discrimination claim

premised upon such an application must fail as a matter of law.

   For the reasons stated above, summary judgment will be granted in Defendant's

favor on Plaintiff's race discrimination claims to the extent they are premised upon

Defendant retaliating against Plaintiff, Plaintiff applying for a nursing position in May

2005, or Plaintiff applying for a RN supervisor position in the fall of 2005.

### C. Plaintiff's race discrimination claims related to Emma Carr's position.

#### 1. Analysis based upon a mixed-motive theory.

Defendant also moves for summary judgment with respect to Plaintiff's race discrimination claims that are premised upon Plaintiff not being interviewed or hired for Emma Carr's charge nurse position when it opened up in October/November 2005. Defendant first argues that summary judgment must be granted on Plaintiff's race discrimination claim related to Emma Carr's position because "she has failed to produce any evidence that PRM 'placed substantial negative reliance on an illegitimate criterion in reaching their decision'." Defendant's Supporting Brief, p. 9.

The standards of proof in a mixed-motive case were set forth by Congress in the Civil Rights Act of 1991. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 94 (2003) (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 251 (1994)) (noting that "§ 107 of the 1991 Act ... 'responded' to Price Waterhouse by 'setting forth standards applicable in mixed motive cases in two new statutory provisions'."). Under the Civil Rights Act of 1991, a mixed-motive plaintiff may establish an unlawful employment practice by demonstrating "that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

Reviewing Plaintiff's Opposition Brief, Plaintiff has not attempted to demonstrate that this is a mixed-motive case, i.e. that race was a motivating factor for Defendant's failure to hire Plaintiff. Instead, she is proceeding under the burden shifting framework

of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Plaintiff's Opposition Brief, pp. 8-13. Therefore, we need not substantively address this contention.

### 2. Analysis of Plaintiff's claim based upon a pretext theory.

Defendant next argues that to the extent Plaintiff is proceeding under a pretext theory, summary judgment must be granted in its favor on Plaintiff's race discrimination claims related to Emma Carr's job because Plaintiff never applied for Emma Carr's position when it became available in the fall of 2005, and therefore, she has not established a prima facie case of race discrimination. Defendant's Supporting Brief, p. 8.

To make out a prima facie case for failure to promote, Plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was rejected (i.e., suffered an adverse employment action); and (4) that action occurred under circumstances giving rise to an inference of discrimination (i.e., nonmembers of the protected class were treated more favorably). Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir.1997).

Interestingly, Plaintiff does not contend that she bid on Carr's position when it opened up in October/November, 2005. Rather, in response to Defendant's argument that Plaintiff never applied for Emma Carr's position when it was posted, Plaintiff contends Defendant's own admissions show that she applied for numerous available positions with Defendant, that these bids should be considered to be bids for Carr's position as well, and cites to the following evidence of record:

13

> Paragraph 7.1 of the PHRC's Findings of the Investigation
> also states "Relative to the Nursing Supervisor position,
> Respondent admits that an advertisement was placed in the
> local publication on October 23 and 26, 2005. It is further
> admitted that Complainant was aware of the opening as she
> submitted a job bid for the position on September 15, 2005."
> (Exhibit "B"). Also, paragraph seven (7) of Defendant's
> Answer to Plaintiff's PHRC Complaint states "it is believed
> and, therefore, averred that the Complainant, Merva Martin,
> submitted a bid for a 7-3 RN supervisor position on
> September 15, 2005." (See Exhibit "A").

Plaintiff's Opposition Brief, p. 9.

The difficulty with Plaintiff's position is that even viewing this evidence in a light

most favorable to Plaintiff as the non-moving party, the RN supervisor position for which

Plaintiff bid on September 15, 2005 and for which PRM-East advertised on or about

October 26, 2005 was not Carr's position, which was a 7-3/3-11 RN position. Further,

although Martin appears to be arguing in her Opposition Brief that both the bid she

submitted in September, 2005 for the RN Supervisor position and a bid she argues she

submitted in May 2005 for a nursing position should be considered as a bid for Emma

Carr's job when it reopened in October/November 2005 because these earlier bids were

still on file at the time Carr's position reopened, See Plaintiff's Opposition Brief, p. 3, we

find that Plaintiff has not submitted any evidence to support her argument. Certainly

there has not been any evidence submitted that suggests that PRM-East had a policy in

place that once an employee bid for a position, that bid was treated as a bid for any and all

subsequent position openings. To the contrary, the evidence of record suggests that to be

eligible for an open position with Defendant, the individual had to specifically bid for that

14

open position. In particular, the standardized Human Resources form in use by Defendant in 2005 concerning "bids for job posting" lists the name of the position at issue and then states: (1) "[t]he posting time for that bid has been completed. The purpose of this memo is to advise you of the bidders on the posting;" and (2) "Please remember, the contract states, 'In filling a vacancy, the Employer shall select the bidding employee with the greatest seniority if that employee has the necessary skills and qualifications to do the job, provided that in cases of competing bidders, the job may be awarded to a less senior bidder when, and only when, the less senior bidder possesses substantially greater skills, bona fide qualifications, and abilities'." See Exhibit B to DSUMF.

Accordingly, we find that even viewing the evidence of record in a light most favorable to Plaintiff as the non-moving party, there is not evidence of record from which a reasonable fact finder could conclude that Plaintiff actually or constructively applied for Carr's position when it opened up in the fall of 2005. Therefore, Plaintiff has not established a prima facie case of race discrimination with respect to Carr's position and Defendant's motion for summary judgment on this part of Plaintiff's race discrimination claim must be granted.

While our analysis of Plaintiff's discrimination claims related to Emma Carr's position could end at this juncture, we take the time to analyze Defendant's alternative argument that even if Plaintiff had applied for Carr's position, summary judgment still must be granted because Defendant has articulated a legitimate non-discriminatory reason for not interviewing and/or hiring Plaintiff for Carr's position and Plaintiff cannot

15

establish that PRM-East's proffered reason for not hiring Plaintiff for Emma Carr's
position was pretextual. Defendant's Supporting Brief, pp. 11-14.

"If a plaintiff establishes a prima facie case of discrimination, then an inference of
discriminatory motive arises and the burden shifts to the defendant to articulate a
legitimate, non-discriminatory reason for the adverse employment action." Makky v.
Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (citing St. Mary's Honor Ctr. v. Hicks, 509
U.S. 502, 506-07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). While Plaintiff argues that
Defendant failed to articulate a legitimate, non-discriminatory reason for the adverse
employment action, Plaintiff not being interviewed or hired for Carr's job, we disagree.
We find that PRM-East articulated a legitimate, non-discriminatory reason for not hiring
Plaintiff: "Emma Carr was doing the job; she thought she wanted to go elsewhere and so
'resigned.' becoming a per diem employee, but still doing the job. Within a short period
of time, she changed her mind and was allowed to rescind the resignation and return to
full-time status. She never really left the job at all." Defendant's Supporting Brief, p.11.

Where as here, "the defendant [articulates a legitimate, non-discriminatory reason
for the adverse employment action], the inference of discrimination drops and the burden
shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext
for intentional discrimination." Id. (citing St. Mary's Honor Center, 509 at 507-08).
Pretext is shown by the plaintiff presenting "some evidence, direct or circumstantial, from
which a fact finder could reasonably either (1) disbelieve the employer's articulated
legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely

16

than not a motivating or determinative cause of the employer's action." <u>Fuentes v.</u>

<u>Perskie</u>, 32 F.3d 759, 764-65 (3d Cir. 1994). "The non-moving plaintiff must demonstrate

such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

employer's proffered legitimate reasons for its action that a reasonable fact finder *could*

rationally find them 'unworthy of credence,' and hence infer 'that the employer did not

act for [the asserted] non-discriminatory reasons'." <u>Id</u>. at 765 (quotations omitted). The

<u>Fuentes</u> standard "places a difficult burden on the plaintiff." <u>Id</u>.

Plaintiff's argument with respect to the pretext element of her race discrimination

claim is as follows:

> As stated, the only "legitimate" reason proffered by
> Defendant for its actions is that "Emma Carr" was doing the
> job; she thought she wanted to go elsewhere and so 'resigned'
> becoming a per diem employee, but still doing the job. Within
> a short period of time, she changed her mind and was allowed
> to rescind the resignation and return to full-time status. She
> never really left the job at all." The problem with this
> explanation is that Defendant has previously admitted that
> following Ms. Carr's resignation, the position was posted as
> available. Defendant has failed to address why Plaintiff was
> not given the courtesy of an interview for this position despite
> plaintiff: (1) having an active bid for the position on record
> with Defendant which preceded the date of resignation and
> posting and (2) being more qualified than Ms. Carr for the
> position. Since 1994, Plaintiff has been the only African-
> American hired as a registered nurse and acting shift
> supervisor for Defendant's East location. Plaintiff was hired
> as a per diem RN, a position she continues to hold. During
> this period of time, Plaintiff has stated that she has bid on
> numerous positions without ever having been asked to
> interview. It is well known that Plaintiff has, for many years,
> desired to be promoted to a full time RN. Such a position
> would entitle her to medical and financial benefits for which

17

> she does not qualify in her per diem status. At the time of Ms.
> Carr's rehiring following her resignation she had
> approximately five years of nursing experience, only two of
> which were with the Defendant. At the same time, Plaintiff
> had approximately twelve years of experience, all with the
> Defendant.

Plaintiff's Opposition Brief, pp. 12-13.

Contrary to Plaintiff's argument, we find that this evidence, even viewed in a light most favorable to Plaintiff, does not qualify as "some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764-65. In other words, the evidence of record, even viewed in a light most favorable to Plaintiff, simply does not support the conclusion that Defendant's stated reason for not interviewing or hiring Martin for Carr's position when it opened in the fall of 2005 is not to be believed or that a reason for Defendant's decision not to interview or hire Plaintiff for Carr's position was because Plaintiff is an African American. Therefore, even if Plaintiff had established her prima facie case of race discrimination related to Carr's position, summary judgment still would have to be granted in favor of Defendant with respect to this part of Plaintiff's race discrimination claims due to Plaintiff's failure to create a genuine issue of material fact with respect to the pretext aspect of her race discrimination claims.

**D. Analysis of Plaintiff's ADEA claim against PRM-East.**

Finally, Defendant also moves for summary judgment in its favor on Plaintiff's

ADEA claim against it on the basis that Plaintiff has failed to state a claim under the

ADEA. Defendant's Supporting Brief, p. 13.  In response, Plaintiff agrees that there is not

evidence to support such a claim and requests to withdraw the ADEA claim. Plaintiff's

Opposition Brief, p. 13. Plaintiff's request to withdraw her ADEA claim against

Defendant is granted.

**IV. Conclusion.**

Defendant's Motion for Summary Judgment as to Plaintiff's Complaint against it

is granted in its entirety.  An appropriate Order follows.

March __9th__, 2010

Maurice B. Cohill, Jr.
Senior District Court Judge

19